IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DIANNE MURRAY RHODES, ) | CIVIL ACTION 4:08-1080-PMD-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

The plaintiff, Dianne Murray Rhodes, filed applications for disability insurance benefits on June 7, 2001, and for Supplemental Security Income (SSI) on April 25, 2001, alleging inability to work since April 20, 2001, due to her low back, feet, legs, hips, and knees; vertigo and difficulty standing and sitting (Tr. 114). Her applications were denied at all administrative levels (Tr. 75-80),

and upon reconsideration (Tr. 83-85). The Administrative Law Judge (ALJ), William F. Pope, issued an unfavorable decision on June 18, 2003, finding plaintiff was not disabled because she retained the residual functional capacity (RFC) to perform light[1] work existing in significant numbers (Tr. 21). Claimant filed a Request for Review with the Appeals Council, and the Appeals Council denied plaintiff's request for review (Tr. 5-7), and plaintiff then filed a complaint with the district court seeking judicial review of the administrative decision. The Court remanded this case for further administrative proceedings on August 16, 2005 (Tr. 266-267). Following remand, a second hearing was held on June 6, 2006, before ALJ Pope. (Tr. 302-335). The ALJ again issued an unfavorable decision on July 27, 2006 (tr. 247-260), and the Appeals Council denied plaintiff's request for review on January 28, 2008 (Tr. 235-237), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981, 416.1481 (2004).

## II. FACTUAL BACKGROUND

The plaintiff, Dianne Murray Rhodes, was born February 9, 1948, (Tr. 97), and was 53 years of age at the time of her application. She completed the 12th grade and has past relevant work as a cashier, retail manager, and fine jewelry sales representative (Tr. 59, 120).

---

[1]"Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R §§ 404.1567(b), 416.967(b) (2004).

### III. DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1) The ALJ failed to properly consider the opinions from the treating and evaluating physicians specifically Dr. Gaines and Dr. Murray.

(2) The Commissioner failed to establish there are significant numbers of skilled sedentary occupations the plaintiff could perform, and that she was therefore not disabled under the medical-vocational guidelines.

(Document #13).

In the decision of July 27, 2006, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since April 20, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and positional vertigo (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has retained the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently; push and pull up to twenty 20 pounds; stand and walk for up to six hours in a workday; and sit throughout the work day. She may occasionally twist, kneel, crouch, and climb stairs and ramps. She may not stoop or climb ladders and scaffolds. She must avoid hazards, including unprotected heights and dangerous machinery. She must have the option

|  |  |
|---|---|
|  | to alternate sitting and standing at the work station at intervals of forty-five to sixty minutes. |
| 6. | The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965). |
| 7. | The claimant was born on February 9, 1948, and was 53 years of age on the alleged disability onset date, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963). She is now 58 years old, which is defined as advanced age. |
| 8. | The claimant has a high school education plus vocational training both as a cosmetologist and as a dental assistance. She is able to communicate in English (20 CFR 404.1564 and 416.964). |
| 9. | The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968). |
| 10. | Considering the claimant's age, education work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 404.1568(d), 416960(c), 416.966, and 416.968(d)). |
| 11. | The claimant has not been under a "disability" as defined in the Social Security Act from April 20, 2001, through the date of this decision  (20 CFR §§404.1520(g) and 416.920(g)). |

(Tr. 252-260).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971).

Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to:  (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are

4

correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

5

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein, in part.

On December 4, 2000, John Savage, M.D., of the Augusta Orthopedic Specialists, examined plaintiff for complaints of back pain. Plaintiff reported she had experienced low back pain associated with right leg pain for many years, but that the pain had increased in the previous three weeks. Plaintiff also stated her family physician had given her some Skelaxin and Celebrex, which had helped her to become more pain free. Plaintiff said she worked as a cashier, standing all day, and did not think she could continue to do this type of work. Examination revealed plaintiff had normal reflexes, negative straight leg raising tests, and no sensory deficits. X-rays showed moderate degenerative changes at L4-L5 and L5-S1. Dr. Savage advised plaintiff to perform back exercises and lose weight (Tr. 163).

On March 19, 2001, Robinson W. Schilling, Jr., M.D., examined plaintiff for a six-month history of vertigo. Plaintiff reported she was taking Antivert on a regular basis, which had helped some, but she was still having "intermittent" vertigo. On examination, plaintiff's external auditory canals and tympanic membranes were normal bilaterally with no evidence of erythema or middle ear effusion. Finger-to-nose, rapid alternating movement, and tandem gait were normal and positional testing showed no nystagmus. Dr. Schilling diagnosed labyrinthine vertigo and recommended a low-salt diet with no caffeine and advised plaintiff to continue taking her medications with the addition of Dyazide (Tr. 172).

On April 20, 2001, plaintiff underwent an electronystagmography (ENG). Plaintiff reported that she primarily felt dizzy when she lied down or bent over. Results of the testing were normal, with the exception of the Hallpike maneuver, which could not be performed (Tr. 169-171).

Plaintiff returned to Dr. Schilling on April 23, 2001, reporting that when she took the Antivert, it controlled her dizziness. She complained of a lot of nasal congestion, but a sinus x-ray was normal. Plaintiff's physical examination was essentially negative and Dr. Schilling recommended that plaintiff perform labyrinthine exercises and continue her medication (Tr. 168).

In a letter dated June 14, 2001, Dr. Schilling stated that plaintiff's physical examination was normal, her mental status was alert, and tests performed were normal. He indicated that her vertigo was about the same. He also stated that plaintiff had not related that she was having any disability other than her vertigo, and that her dizziness "may be interfering with her work" (Tr. 166-167).

On July 30, 2001, B. Lamar Murray, M.D., stated that plaintiff had "severe" degenerative joint disease of the lumbar spine with radiculopathy into her thighs and legs, as well as exogenous obesity that aggravated her lumbar pathology and caused her pain to be more severe. Dr. Murray also noted that plaintiff had hypertension which was controlled with medication, and positional vertigo which caused her to be dizzy most of the time. Dr. Murray stated plaintiff was "totally disabled for any work that requires her to be on her feet or to sit for prolonged periods. She is severely limited for any walking" (Tr. 174).

On October 11, 2001, Edmund P. Gaines, Jr., M.D., performed a consultative examination of plaintiff. Plaintiff reported that she was working part time at a truck stop, where she could sit for approximately three hours, get up and move around, and then work for another three hours. She stated that she could stand for two or three hours, but once the pain started, it took longer for the pain

to dissipate. Plaintiff also noted difficulty stooping or bending and going up and down stairs. She reported she developed vertigo in October 2000, which cleared in May of 2001, but that the vertigo had recently returned with the onset of a head cold. Plaintiff stated she did her own cooking and cleaning and was able to drive. On examination, plaintiff was 67 inches and weighed 287 pounds. She had a normal gait; full range of motion in the ankles; full strength in the lower extremities; positive straight leg raising tests; and normal sensation and reflexes. Plaintiff also had full range of motion of the cervical and dorsal spines, but she had limitation of motion of the lumbar spine and was very sensitive to the slightest touch on either side of the lumbar vertebrae. Dr. Gaines also noted that plaintiff became dizzy at the end of the examination and he advised her to wait in the lobby for 15 minutes before attempting to drive. An x-ray of plaintiff's lumbar spine showed joint space narrowing at L4-5 with lipping osteophytes. Dr. Gaines diagnosed degenerative disc disease of the lumbar spine, osteoarthritis, severe exogenous obesity, and vertigo secondary to inner ear disease. Dr. Gaines opined plaintiff's arthritis would progressively worsen over time and her obesity would increase her difficulty with weight bearing. He opined that plaintiff could probably be retrained in a sedentary position. (Tr. 176-178).

On September 25, 2002, Dr. Murray completed a form stating that plaintiff could lift less than ten pounds; stand and walk less than two hours during an eight-hour work day; stand/sit 30-45 minutes at a time and less than two hours in an eight-hour work day; occasionally twist, stoop, crouch, and climb stairs; never climb ladders; should avoid all exposure to noise and environmental irritants such as fumes and dust; should avoid all exposure to hazards; and needed the opportunity to shift between sitting and standing at will. Dr. Murray also noted that plaintiff's pain frequently interfered with her attention and concentration, that her impairments would produce "good days" and

9

"bad days," and that she needed to elevate her legs 20 percent of the time while she was sitting (Tr. 188-202).

A polysomnography performed on October 31, 2002, showed findings consistent with obstructive sleep apnea (Tr. 217-218).

Plaintiff was admitted to Fairview Park Hospital on November 13, 2002, for Laparscopic Roux-en-y bypass surgery for treatment of her morbid obesity. Plaintiff's admitting physician showed normal extremities with good distal pulses and no lower extremity edema and a normal neurological examination. Plaintiff tolerated procedure well and was discharged on November 15, 2002, in good condition and ambulating without difficulty (Tr. 212-215).

On December 5, 2002, plaintiff experienced complications and was hospitalized overnight for treatment of severe dehydration (Tr. 215-216).

In a letter dated January 10, 2003, Dr. Murray noted that plaintiff was his niece, and he had provided medications for her from his drug samples. He stated that plaintiff had degenerative joint disease with severe back pain, arthritic heel spurs, plantar fascitis, and obesity, and opined that she was "totally disabled" (Tr. 219).

The medical evidence submitted in regards to the second hearing before the ALJ consisted of a noted dated March 22, 2006, from Dr. Murray stating that he had treated plaintiff in his office for many years for hypertension, vertigo, and arthritis. Dr. Murray opined that plaintiff's prescribed medications controlled her conditions, but did not "alleviate her symptoms." (Tr. 301).

## V. ARGUMENTS

First, plaintiff argues that this case was previously remanded from the U.S. District Court in part for failure of the ALJ to properly consider the opinions of Dr. Gaines and Dr. Murray. Plaintiff asserts that the ALJ focused on invalid reasons for rejecting Dr. Gaines' assessment by stating that he was a consultative examiner who saw her at the request of the Social Security and that his opinion is not entitled to any particular status or weight under the Regulations. (Plaintiff's brief, citing to Tr. 256). Plaintiff argues that this is incorrect and the weight to be accorded to Dr. Gaines' assessment is significant under the regulations and comes in second only to the opinions of the treating physician. Plaintiff argues that "the Court after remanding the ALJ decision to properly evaluate the opinion of Dr. Gaines, cannot let stand a decision that inaccurately suggests the ALJ is not required under the regulations to provide an examining opinion any particular status or weight." (Plaintiff's brief, p. 14-15). Furthermore, plaintiff asserts that the ALJ is incorrect in stating that the opinion does not provide any specific functional limitations when the restriction to sedentary work is in itself the limitations to which the plaintiff is restricted. Plaintiff contends that the Court had already noted there was no substantial evidence rebutting Dr. Gaines' opinion and that there are no treating or examining opinions contradicting Dr. Gaines' assessment and finding that plaintiff is able to perform greater than sedentary work. Further, plaintiff asserts that the Commissioner might argue the ALJ's failure to adopt Dr. Gaines' restriction to sedentary work is harmless error because the VE cited sedentary positions the plaintiff could perform. Plaintiff asserts that "if the individual is restricted to sedentary work and then due to her problems she is not going to be able to maintain a normal sitting position for a significant majority of the day, she is not going to be able to perform any range of work on a full time basis because she is not going to meet the sitting or standing requirements of

full time work." (Plaintiff's brief). Plaintiff requests that her case be remanded again for the application of Dr. Gaines' restriction to sedentary work to the findings or a valid explanation for the dismissal of Dr. Gaines' opinion.

Defendant argues that ". . . Dr. Gaines, who conducted a consultative examination of plaintiff in November 2001, had rather equivocally concluded that plaintiff could 'probably' work at the sedentary level of exertion. However, his conclusion is not supported by the evidence of record, including the results of Dr. Gaines' own examination." (Defendant's brief). Defendant asserts that the ALJ provided legitimate reasons for discounting Dr. Gaines' opinion noting that his opinion was not entitled to the same weight as a treating physician. Defendant contends that the ALJ properly noted that Dr. Gaines failed to identify any specific functional limitations, such as limitations in her ability to walk, sit, stand, or lift which plaintiff might have, and he also observed the fact that Dr. Gaines had examined plaintiff well before she had undergone gastric bypass surgery and subsequently lost a significant amount of weight.

The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2) (2006). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001). "Thus, by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (internal quotation marks omitted). In addition, opinions regarding disability are reserved for the

Commissioner and are not medical opinions. See Determining Disability and Blindness Medical Considerations-Evaluating Opinion Evidence, 20 C.F.R. § 404.1527(e) (2005). However, in making such a determination, the Commissioner will "review all of the medical findings and other evidence that support a medical source's statement that [a claimant is] disabled." Id.

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following five factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §§ 404.1527(d)(2) (i-ii) and (d)(3)-(5). Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, at * 5 (1996).

In the prior case to which plaintiff cites and relies, the undersigned found the following :

> . . . there is no conflicting medical evidence which could justify ignoring the opinion of Dr. Gaines, who the plaintiff was sent to by the administration for an examination. There is no contradictory evidence put forth by the ALJ to completely ignore the determination and functional assessment of plaintiff by Dr. Gaines. Accordingly, the undersigned finds that the ALJ improperly disregarded Dr. Gaines' opinion with regard to the fact that plaintiff could possibly be retrained for sedentary work only. Without any medical evidence by an examining physician to contradict this report, the undersigned finds that the ALJ should have given this portion of Dr. Gaines' opinion proper weight and/or any explanations for discounting it.

(Report and recommendation, Tr. 279).

A review of the ALJ's decision after the second administrative hearing, reveals he found the following with respect to Dr. Gaines' report:

> As for the opinions evidence, I note first that in the report of his consultative examination on October 11, 2001, Dr. Gaines included a comment that the claimant

13

> "probably could retrain in a sedentary position" Dr. Gaines is not a "treating source" for the claimant, and his opinion is not entitled to any particular status or weight under the regulations. In evaluating his opinion, I must note that his report does not identify any specific functional limitations that would restrict the claimant to sedentary work. In addition, the objective findings of his examination do not demonstrate a limitation to sedentary work, nor do those of any other physician. His language is also unclear, indicating only that he believes she could "retrain" in a sedentary position, not that he finds her incapable of performing more than sedentary work, as the claimant's attorney has argued. Dr. Gaines also particularly noted the claimant's obesity, and his examination took place well before her gastric bypass surgery and her weight loss since then.

(Tr. 256).

As noted in the previous case, the undersigned recommended remand for the ALJ to either "give this portion of Dr. Gaines' opinion proper weight and/or any explanations for discounting it." The ALJ qualifies Dr. Gaines' as a "consulting" physician states that his opinion is not entitled to any particular weight. Dr. Gaines examined the claimant and, thus, his opinion is entitled to the corresponding weight. While the law is that non-treating sources are typically given less weight than treating sources, an examining medical source must be considered under the criteria of 20 CFR § 404.1527(d). As set forth by the ALJ, Dr. Gaines' opinion arguably is unclear as to his restriction to sedentary work. Also, as stated by the ALJ, Dr. Gaines fails to include any specific functional limitations. The record is not fully developed to allow this court to determine whether substantial evidence supports the ALJ's determination of discounting and construing Dr. Gaines' opinion. Accordingly, it is recommended that this case be remanded for the ALJ to obtain clarification from Dr. Gaines as to his opinion that plaintiff probably could "retrain in a sedentary position" and the basis for this opinion related to plaintiff's residual functional capacity.

Plaintiff also argues that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Murray. Plaintiff asserts that the court previously considered and rejected the

argument that Dr. Murray's opinion can be rejected due to a lack of objective evidence or clinical findings. Plaintiff asserts that once again the ALJ states that "there are no objective clinical findings . . . to support the opinions as to functional limitations given by Dr. Murray." Plaintiff argues that Dr. Murray specifically notes a number of positive clinical findings to support his assessment. Also, plaintiff asserts that the evidence does not support the ALJ's finding that plaintiff told Dr. Murray that she was frequently having vertigo while telling other doctors that her symptoms had resolved. Plaintiff identifies Dr. Murray's statement the ALJ is referring to, written on July 30, 2001. (Tr. 174). Plaintiff asserts that the last record from Dr. Schilling prior to that date indicates that the plaintiff's dizziness "was about the same, not really improved" (tr. 166) and that Dr. Gaines' evaluation from October 2001 indicates that the plaintiff told him that her vertigo had cleared for a brief time earlier in the year, but then returned with the onset of a head cold. (Tr. 176). Therefore, plaintiff asserts that the evidence does not factually support the stated reasons the ALJ provides for impliedly finding plaintiff was providing inaccurate information to Dr. Murray. In conclusion, plaintiff argues that "The ALJ fails to provide valid reasons for dismissing the treating opinion in this case that have not already been rejected by the Court." (Plaintiff's brief, p. 20).

Defendant argues that the ALJ properly discounted the opinion of Dr. Murray. Defendant argues that as the ALJ noted, plaintiff is Dr. Murray's niece and despite Dr. Murray's opinion that he had treated plaintiff for many, many years, he discounted Dr. Murray's opinion because he kept no treatment notes, reports of objective findings, diagnostic test results, or record of prescriptions.

A review of the previous report and recommendation which was adopted by the district judge, reveals the following:

15

> There is no conflicting medical evidence which could justify completely ignoring the opinion of Dr. Murray, who did state his opinions were based on objective findings such as x-rays and examination.

A review of the ALJ's latest decision reveals he found the following with respect to Dr. Murray's opinion:

> In assessing the various opinions of Dr. Murray, I will initially note that his earliest opinion is not essentially inconsistent with the residual functional capacity identified above, including the sit/stand opinion as described. But more fundamentally, the facts concerning his treatment of the claimant must be emphasized to evaluate what weight to give his written opinions. It is undisputed that Dr. Murray is the claimant's uncle. He treats her as a family member, does not charge her for medical services, and gives her medications from samples available in his office. He has reported that he has treated her for "many, many years," yet he has never kept treatment notes, reports of objective findings, or even prescriptions for medication (since he always gives her samples.). In Exhibits 8F and 9F, he has purported to include some clinical findings to support the limitations she described, but no clinical records, x-ray reports, or other medical documentation has been submitted to support his contentions. Essentially, he argues that his memory for many years of treatment is sufficient to support his opinions. It is important to remember that Dr. Murray wrote on July 30, 2001, that the claimant was "dizzy most of the time" (Exhibit 4F). Yet at that time, the reports of Dr. Schilling and Dr. Gaines show that her earlier complaints of vertigo had resolved, with no more than intermittent episodes and no need for ongoing medications. As discussed above, even the claimant has admitted that she had not told Dr. Murray (the only doctor now treating her) of her self-initiated change of medication dose. The evidence suggests that the claimant does not give Dr. Murray full information concerning her medical condition or treatment, and his opinions can only be based on such incomplete information. There are no objective clinical findings, of his own or any other physician, to support the opinions as to functional limitations given by Dr. Murray. Even by their own terms, they are based largely on subjective complaints of the claimant.
>
> After careful review of all the evidence, I do not find the opinions of Dr. Murray or Dr. Gaines to be supported by objective clinical findings or persuasive in evaluation the claimant's disability,

(Tr. 257).

As to Dr. Murray's opinion, it does not appear that his opinion and functional limitation conclusions are supported by well documented clinical notes. Dr. Murray has stated that he is basing his opinion on the fact that he had treated plaintiff for many years and on x-rays of the lumbar spine showing degenerative disease. However, the opinion does not state what objective medical testing and/or what x-rays he is relying to find that she has "severe degenerative joint disease." (Tr. 174). A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. Id. 1996 W L 374188, *4. However, Dr. Murray has stated that he is relying on objective medical testing but does not set out what that testing consisted of and has not provided copies of those objective tests or findings. Dr. Murray, as the treating physician, has given an opinion that plaintiff is disabled and completed several functional limitation forms without providing the objective evidence to support his findings. The ALJ should have requested the objective testing evidence from Dr. Murray before completely disregarding them for want of objective support. Therefore, upon remand, the ALJ should be instructed to seek from Dr. Murray additional medical evidence and/or clarification to include objective medical evidence on which he based his opinions as to plaintiff's condition and residual functional capacity. The ALJ is unable to adequately evaluate a treating physician's opinion purportedly supported by objective testing without

the opportunity to review such evidence. Additionally, the ALJ should seek form Dr. Murray records of treatment since 2001.

Furthermore, once the ALJ receives clarification from Dr. Gaines and the evidence relied upon by Dr. Murray, the ALJ should present a hypothetical to the VE including any functional restrictions that are supported by substantial evidence and reconcile any contradiction between the VE's testimony and the DOT including clarification on whether or not the plaintiff has transferable skills that require little to no vocational adjustment to other positions within her RFC.

## VI. CONCLUSION

In conclusion, the undersigned is aware that this case has been remanded once before, and that it must be frustrating for the administrative court to make its determinations without an adequate record. It may well be that substantial evidence exists to support the Commissioner's decision in the instant case; however, the court cannot speculate on a barren record devoid of the appropriate administrative analysis. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is,

RECOMMENDED that the Commissioner be decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative

action as set out above.

                                          Respectfully submitted,

                                          s/Thomas E. Rogers, III
                                          Thomas E. Rogers, III
                                          United States Magistrate Judge

August 20, 2009
Florence, South Carolina