IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DIANE M. RHODES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 4:08-1080-PMD-TER |
| v. ) | |
| ) | |
| MICHAEL J. ASHTRUE, Commissioner ) | **ORDER** |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court upon Defendant's Objections to a Magistrate Judges Report and Recommendation ("R&R") that the Commissioner's decision denying benefits be reversed and the claim be remanded to the Commissioner for further proceedings. Plaintiff Diane M. Rhodes ("Claimant") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Social Security Commissioner denying her claims for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423, 1381a.

## BACKGROUND

### I. Procedural History

Claimant applied for Social Security Income on April 25, 2001 and disability insurance benefits on June 7, 2001, alleging that she became unable to work on April 20, 2001, due to pain in her low back, feet, legs, hips, and knees; vertigo; and difficulty standing and sitting. Claimant, 53-years-old at the time she allegedly became disabled, has a twelfth-grade education and past relevant work experience as a cashier, retail manager, and fine jewelry sales representative. Her

1

applications were denied at all administrative levels and upon reconsideration. The Administrative Law Judge ("ALJ") issued an unfavorable decision on June 18, 2003, finding Claimant was not disabled because she repainted the residual functional capacity to perform light work existing in significant numbers. (Tr. 21.) Claimant filed a Request for Review with the Appeals Council, and the Appeals Council denied the request. Claimant then filed a complaint with the district court seeking judicial review of the administrative decision. The court remanded this case for further administrative proceedings on August 16, 2005. Following remand, a second hearing was held on June 6, 2006 before the same ALJ, and again, he issued an unfavorable decision on July 27, 2006. The Appeals Council denied Claimant's request for review on January 28, 2008, making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).

The ALJ's decision denying benefits, dated July 27, 2006, found the following:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since April 20, 2001, the alleged onset date. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et. seq.*)

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and positional vertigo. (20 CFR 404.1520(c) and 416.920(c).)

4. The claimant does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.)

5. After careful consideration of the entire record, I find that the claimant has retained the residual functional capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently; push and pull up to twenty pounds; stand and walk for up to six hours in a workday; and sit throughout the work day. She may occasionally twist, kneel, crouch, and climb stairs and ramps. She may not stop or climb ladders and scaffolds. She must avoid hazards, including unprotected heights and dangerous machinery. She must have the option to alternate sitting and standing at the work station at intervals of forty-five to sixty minutes.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965.)

7. The claimant was born on February 9, 1948 and was 53 years of age on the alleged disability onset date, which is defined as an individual closely approaching advanced age. (20 CFR 404.1563 and 416.963.)

8. The claimant has a high school education plus vocational training both as a cosmetologist and as a dental assistance. She is able to communicate English. (20 CFR 404.1564 and 416.964.)

9. The claimant has acquired work skills from past relevant work. (20 CFR 404.1568 and 416.968.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, the clamant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (20 CFR 404.1560(c), 404.1566, 404.1568(d), 416.960(c), 416.966, and 416.968(d).)

11. The claimant has not been under a "disability," as defined in the Social Security Act, from April 20, 2001, through the date of this decision. (20 CFR 404.1520(g) and 416.920(g).)

(Tr. 252–60.)

## II. Medical Evidence in the Record

Claimant or Defendant has not disputed the medical records as stated by the Magistrate Judge; therefore, the court adopts his statement of the medical record. The record reveals that on December 4, 2000, John Savage, M.D. of the Augusta Orthopedic Specialists examined Claimant

for complaints of back pain. Plaintiff reported she had experienced low back pain associated with right leg pain for many years, but that the pain had increased in the previous three weeks. Claimant also stated her family physician had given her some Skelaxin and Celebrex, which had helped her to become more pain free. Claimant said she worked as a cashier, standing all day, and did not think she could continue to do this type of work. Examination revealed Claimant had normal reflexes, negative straight leg raising tests, and no sensory deficits. X-rays showed moderate degenerative changes at L4-L5 and L5-S1. Dr. Savage advised Claimant to perform back exercises and lose weight. (Tr. 163.)

On March 19, 2001, Robinson W. Schilling, Jr., M.D., examined Claimant for a six-month history of vertigo. Claimant reported she was taking Antivert on a regular basis, which had helped some, but she was still having "intermittent" vertigo. ON examination, Claimant's external auditory canals and tympanic membranes were normal bilaterally with no evidence of erythema or middle ear effusion. Finger-to-nose, rapid alternating movement, and tandem gait were normal, and positional testing showed no nystagmus. Dr. Schilling diagnosed labyrinthine vertigo, recommended a low-salt diet with no caffeine, and advised Claimant to continue taking her medications with the addition of Dyazide. (Tr. 172.) On April 20, 2001, Claimant underwent an electronystagmography (ENG). She reported dizziness when she lied down or bent over. Results of the testing were normal, with exception of the Hall pike maneuver, which could not be performed (Tr. 160–171.) Plaintiff returned to Dr. Schilling on April 23, 2001, reporting that when she took the Antivert, it controlled her dizziness. She complained of a lot of nasal congestion, but a sinus x-ray was normal. Claimant's physical examination was essentially negative, and Dr. Schilling recommended that Claimant perform labyrinthine exercises and

4

continue her medication. (Tr. 168.)

In a letter dated June 14, 2001, Dr. Schilling stated that Claimant's physical examination was normal, her mental status was alert, and tests performed were normal. He indicated that her vertigo was about the same. He also stated that Claimant had not related that she was having any disability other than her vertigo and that her dizziness "may be interfering with her work." (Tr. 166–67.)

On July 30, 2001, B. Lamar Murray, M.D., stated that Claimant had "severe" degenerative joint disease of the lumbar spine with radiculopathy into her thighs and legs, as well as exogenous obesity that aggravated her lumbar pathology and caused her pain to be more severe. Dr. Murray also noted that Claimant had hypertension, which was controlled with medication, and positional vertigo, which caused her to be dizzy most of the time. Dr. Murray stated Plaintiff was "totally disabled for any work that requires her to be on her feet or to sit for prolonged periods. She is severely limited for any walking." (Tr. 174.)

On October 11, 2001, Edmund P. Gaines, Jr., M.D., performed a consultative examination of Claimant. Claimant reported that she was working part time at a truck stop, where she could sit for approximately three hours, get up and move around, and the work for another three hours. She stated that she could stand for two or three hours, but once the pain started, it took longer for the pain to dissipate. Claimant also noted difficulty stooping or bending and going up and down stairs. She reported she developed vertigo in October 2000, which cleared in May of 2001, but that the vertigo had recently returned with the onset of a head cold. Claimant stated she did her own cooking and cleaning and was able to drive. On examination, Claimant was 67 inches and weighed 287 pounds. She had a normal gait; full range of motion in

the ankles; full strength in the lower extremities; positive straight leg raising tests; and normal sensation and reflexes. She also had full range of motion of the cervical and dorsal spines, but she had limitation of motion of the lumbar spine and was very sensitive to the slightest touch on either side of the lumbar vertebrae. Dr. Gaines also noted that Claimant became dizzy at the end of the examination, and he advised her to wait in the lobby for 15 minutes before attempting to drive. An x-ray of Claimant's lumbar spine showed joint space narrowing at L4-5 with lipping osteophytes. Dr. Gaines diagnosed degenerative disc disease of the lumbar spine, osteoarthritis, severe exogenous obesity, and vertigo secondary to inner ear disease. Dr. Gaines opined Claimant's arthritis would progressively worsen over time and her obesity would increase her difficulty with weight bearing. He opined that Claimant could probably be retrained in a sedentary position. (Tr. 176–78.)

On September 25, 2002, Dr. Murray completed a form stating that Claimant could lift less than ten pounds; stand and walk less than two hours during an eight-hour day; stand/sit 30–45 minutes at a time and less than two hours in an eight-hour work day; occasionally twist, stoop, crouch, and climb stairs; never climb ladders; should avoid all exposure to noise and environmental irritants such as fumes and dust; should avoid all exposure to hazards; and needed the opportunity to shift between sitting and standing at will. Dr. Murray also noted that Claimant's pain frequently interfered with her attention and concentration, that her impairments would produce "good days" and "bad days," and that she needed to elevate her legs 20 percent of the time while she was sitting. (Tr. 188–202.) A polysomnography performed on October 31, 2002, showed findings consistent with obstructive sleep apnea (Tr. 217–18.)

Claimant was admitted to Fairview Hospital on November 13, 2002, for Laparoscopic

Roux-en-y bypass surgery for treatment of her morbid obesity. Her admitting physician showed normal extremities with good distal pulses, no lower extremity edema, and a normal neurological examination. Claimant tolerated the procedure well and was discharged on November 15, 2002, in good condition and ambulating without difficulty. (Tr. 212–15.) On December 5, 2002, Claimant experienced complications and was hospitalized overnight for treatment of severe dehydration (Tr. 215–16.) In a letter dated January 10, 2003, Dr. Murray noted that Claimant was his niece, and he had provided medications for her from his drug samples. He stated that Claimant had degenerative joint disease with severe back pain, arthritic heel spurs, plantar fasciitis, and obesity, and opined that she was "totally disabled." (Tr. 219.)

The medical evidence submitted in regards to the second hearing before the ALJ consisted of a note dated March 2, 2006 from Dr. Murray stating that he had treated Claimant in his office for many years for hypertension, vertigo, and arthritis. Dr. Murray opined that Claimant's prescribed medications controlled her conditions, but did not "alleviate her symptoms." (Tr. 301.)

## STANDARD OF REVIEW

### I. Magistrate Judge's Report and Recommendation

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in

whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is accepted as an agreement with the conclusions of the Magistrate Judge. *See Thomas v. Arn*, 474 U.S. 140 (1985).

## II. Judicial Review Under Social Security Act

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Although this court may review parts of the Magistrate Judge's R&R *de novo*, judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> 'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original)).

**ANALYSIS OF COMMISSIONER'S OBJECTIONS**

In recommending that this case be remanded for further proceedings, the Magistrate Judge found that the record was not fully developed to allow the court to determine whether substantial evidence supports the ALJ's determination of discounting Dr. Gaines' opinion that Claimant "probably could retrain in a sedentary position" and Dr. Murray's opinion that Claimant is disabled. Defendant objects to remanding this case. In his first report and recommendation, the Magistrate Judge remanded the case for further review of Dr. Edmund P. Gaines, Jr.'s opinion, stating:

> [T]here is no conflicting medical evidence which could justify ignoring the opinion of Dr. Gaines, who the plaintiff was sent to by the administration for an examination. There is no contradictory evidence put forth by the ALJ to completely ignore the determination and functional assessment of plaintiff by Dr. Gaines. Accordingly, the undersigned finds that the ALJ improperly disregarded Dr. Gaines' opinion with regard to the fact that plaintiff could possibly be retrained for sedentary work only. Without any medical evidence by an examining physician to contradict this report, the undersigned finds that the ALJ should have given this portion of Dr. Gaines' opinion proper weight and/or any explanations for discounting it.

(Tr. 279.) After conducting a supplemental hearing, the ALJ issued a second decision, and with respect to Dr. Gaines' opinion, he stated the following:

> As for the opinions evidence, I note first that in the report of his consultative examination on October 11, 2001, Dr. Gaines included a comment that the claimant 'probably could retrain in a sedentary position.' Dr. Gaines is not a 'treating source' for the claimant, and his opinion is not entitled to any particular status or weight under the regulations. In evaluating his opinion, I must note that his report does not identify any specific functional limitations that would restrict the claimant to sedentary work. In addition, the objective findings of his examination do not demonstrate a limitation to sedentary work, nor do those of any other physician. His language is also unclear, indicating only that he believes she could 'retrain' in a sedentary position, not that he finds her incapable of performing more than sedentary work, as the claimant's attorney has argued. Dr. Gaines also particularly noted the claimant's obesity, and his examination took

9

> place well before her gastric bypass surgery and her weight loss since then.
>
> . . . .
>
> After careful review of all the evidence, I do not find the opinions of . . . Dr. Gaines to be supported by objective clinical findings or persuasive in evaluating the claimant's disability.

(Tr. 256–57.) While the ALJ gave specific reasons for not according any weight to Dr. Gaines' opinion—that he is only a consulting physician, rather than a treating physician and that he examined Claimant prior to her gastric bypass surgery, the Magistrate Judge believes the ALJ failed to find out what exactly Dr. Gaines' opinion is. Uncertainty exists as to the meaning of his statement that Claimant "probably could retrain in a sedentary position," and the ALJ admits in his decision that this language is "unclear." Instead of contacting Dr. Gaines for a clarification, however, the ALJ opted to interpret the statement against Claimant. According to the ALJ, the opinion indicates "only that [Dr. Gaines] believes she could 'retrain' in a sedentary position, not that he finds her incapable of performing more than sedentary work," (Tr. 256), while the Magistrate Judge seems to have interpreted the same statement to mean, "that plaintiff could possibly be retrained for sedentary work only." (Tr. 279.) The Magistrate Judge concluded that the record is not fully developed to allow the court to determine whether substantial evidence supports the ALJ's determinate of discounting and construing Dr. Gaines' opinion, in light of the unclear opinion just discussed and the fact that Dr. Gaines failed to include any specific functional limitations in his report. Therefore, the Magistrate Judge recommended remanding this matter so the ALJ could obtain clarification from Dr. Gaines as to his opinion and the basis for this opinion related to Claimant's residual functional capacity.

The court agrees with the Magistrate Judge and adopts his recommendation. Defendant

objects to the Magistrate Judge's recommendation because he contends that the Magistrate Judge evaluated Dr. Gaines' opinion as a treating physician, when in fact Dr. Gaines was only a consulting physician. The court disagrees. Although the Magistrate Judge did discuss the proposition that a treating physician's opinion must be accorded substantial weight absent good cause to the contrary when analyzing the ALJ's review of his opinion, the Magistrate Judge also recognized that the ALJ considered Dr. Gaines as a consulting physician. Moreover, the Magistrate Judge went on to note that "[w]hile the law is that *non-treating* sources are typically given less weight than treating sources, an examining medical source must be considered under the criteria of 20 C.F.R. § 404.1527(d)." (R&R at 14) (emphasis added). More importantly, there clearly exists uncertainty surrounding what it is Dr. Gaines exactly opines. This is evident by the very different interpretations of his opinion that Claimant "probably could retrain in a sedentary position" is given by the ALJ and the Magistrate Judge. Without knowing exactly what Dr. Gaines' opinion is, it is difficult to determine the amount of weight it should be given, much less, whether substantial evidence supports the ALJ's conclusion.

Defendant also contends that, by asking the ALJ to have Dr. Gaines clarify his opinion, the court is assigning the ALJ a duty which is not required by the regulations, "which specifies only that an ALJ is required to recontact a physician when the evidence of the record is inadequate for the ALJ to make a decision regarding a claimant's disability." (Objections at 2.) The regulations provide:

> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating

sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have.

20 C.F.R. § 404.1527(c)(3). The regulations further provide:

Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e)(1). Based on a reading of these provisions, the ALJ should recontact a medical source when the report from the medical source contains a conflict or ambiguity that must be resolved. Therefore, on remand, the ALJ should seek clarification from Dr. Gaines as to his opinion and the basis for this opinion related to Claimant's residual functional capacity, as such information will straighten the record for review.

In his first report and recommendation, the Magistrate Judge also remanded the case for further review of the opinion of Dr. B. Lamar Murray, Claimant's treating physician and uncle. The Magistrate Judge stated: "There is no conflicting medical evidence which could justify completely ignoring the opinion of Dr. Murray, who did state his opinions were based on

objective findings such as x-rays and examination." In his second decision, the ALJ stated the following with respect to Dr. Murray's opinion:

> In assessing the various opinions of Dr. Murray, I will initially note that his earliest opinion is not essentially inconsistent with the residual functional capacity identified above, including the sit/stand opinion as described. But more fundamentally, the facts concerning his treatment of the claimant must be emphasized to evaluate what weight to give his written opinions. It is undisputed that Dr. Murray is the claimant's uncle. He treats her as a family member, does not charge her for medical services, and gives her medications from samples available in his office. He has reported that he has treated her for "many, many years," yet he has never kept treatment notes, reports of objective findings, or even prescriptions for medication (since he always gives her samples.). In Exhibits 8F and 9F, he has purported to include some clinical findings to support the limitations she described, but no clinical records, x-ray report, or other medical documentation has been submitted to support his contentions. Essentially, he argues that his memory for many years of treatment is sufficient to support his opinions. It is important to remember that Dr. Murray wrote on July 30, 2001, that the claimant was "dizzy most of the time" (Exhibit 4F). Yet at that time, the reports of Dr. Schilling and Dr. Gaines show that her earlier complaints of vertigo had resolved, with no more than intermittent episodes and no need for ongoing medications. As discussed above, even the claimant had admitted that she had not told Dr. Murray (the only doctor now treating her) of her self-initiated change of medication dose. The evidence suggests that the claimant does not give Dr. Murray full information concerning her medical condition or treatment, and his opinions can only be based on such incomplete information. There are no objective clinical findings, of his own or any other physician, to support the opinions as to functional limitations given by Dr. Murray. Even by their own terms, they are based largely on subjective complaints of the claimant.
>
> . . . .
>
> After careful review of all the evidence, I do not find the opinions of . . . Dr. Murray to be supported by objective clinical findings or persuasive in evaluating the claimant's disability.

(Tr. 256–57.) Even though the Magistrate Judge notes that Dr. Murray's opinions and functional limitation conclusions do not appear to be supported by well documented clinical notes, he also recognized that Dr. Murray based his opinion on the fact that he treated Claimant for many years

13

and on x-rays of the lumbar spine showing degenerative disease. Since Dr. Murray is Claimant's treating physician, albeit also her uncle, and since treating physicians' opinions are entitled to deference, the Magistrate Judge believes the ALJ should have requested the objective testing evidence from Dr. Murray before completely disregarding them for want of objective support. He recommends that the court remand the case one more time so the ALJ can seek for Dr. Murray the objective medical evidence on which he bases his opinion so to Claimant's condition and residual functional capacity.

In his Objections, Defendant contends that the ALJ gave sufficient reasoning as to why Dr. Murray's opinion is not entitled to significant weight, especially since the ALJ found it lacking any clinical evidence support. Defendant also reminds the court that it Claimant bears the burden of proving her disability. While Claimant does bear the burden of proof, as stated by Defendant in his Objections, objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ. *See, e.g.*, *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (holding that treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1987) (stating that the treating physician's opinion is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" and should be disregarded "only if there is persuasive contradictory evidence"). Since Dr. Murray is Claimant's treating physician and since he did state that x-rays of the lumbar spine show she suffers from degenerative disease, (Tr. 191), the court agrees with the Magistrate Judge's recommendation and adopts it.

As already quoted, the regulations permit an ALJ to recontact a treating physician or other medical source when his or her "report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 404.1512(e)(1). From the record, it appears that no additional evidence was submitted at the supplemental hearing, nor did the ALJ further investigate the evidence supporting Dr. Murray's opinion. (*See* Tr. 303–304). As the Magistrate Judge noted, "It may well be that substantial evidence exists to support the Commissioner's decision in the instant case; however, the court cannot speculate on a barren record devoid of the appropriate administrative analysis;" The court believes the ALJ should review the objective evidence, however much may exist, before finalizing his evaluation of Claimant's treating physician's opinion. Therefore, the court instructs the ALJ, on remand to request from Dr. Murray any objective medical evidence, such as the x-rays of Claimant's lumbar spine, which support his opinions as to Claimant's condition and residual functional capacity. The court also agrees with the Magistrate Judge that once the ALJ receives clarification from Dr. Gaines and the objective evidence relied upon by Dr. Murray, he should present a hypothetical to the vocational expert, including any functional restrictions that are supported by substantial evidence.

# CONCLUSION

It is **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** for reconsideration in accordance with this Order.[1]

    **AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**September 29, 2009**
**Charleston, SC**

---

[1] "Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*" Language taken from *Stutts v. Astrue*, No. 06-G-1476-NW, 2007 WL 1696878, at *5 (N.D. Ala. June 13, 2007).